TEXTO COMPLETO DE LA RESOLUCION
La recurrente, Ford Motor Company Caribbean, Inc., solicita se revise la resolución emitida por el Departamento de Asuntos del Consumidor (en adelante DACO), el 10 de mayo de 2000, mediante la eual *918 decretó la resolución del contrato de compraventa al por menor a plazos de un vehículo de motor y ordenó a Ford Motor Company Caribbean y a Bayamón Ford devolver, solidariamente, a los recurridos todo el dinero pagado por razón del contrato y relevarlos del remanente del mismo.
I
Los hechos procesales relevantes al caso se exponen a continuación.
El 29 de diciembre de 1998, los recurridos adquirieron de Autos Summit, Co. h/n/c Bayamón Ford, un vehículo de motor nuevo. El precio de venta al contado de dicho vehículo fue de $22,995.00, del cual los recurridos pagaron un pronto de $3,848.54. El remanente del precio fue financiado por Ford Motor Credit Co. Este sería pagadero a plazos. Simultáneo al otorgamiento del contrato de compraventa al por menor a plazos, la entidad financiera advino cesionaria de todos los derechos e intereses de Bayamón Ford sobre el mismo.
Surge del contrato que además del precio de venta, Ford Motor Credit Co. financió las primas de un seguro del tipo conocido como "double interest" para cubrir el vehículo, por lo que en cada plazo mensual a ser pagado por los recurridos estaba incluida una partida para el re-pago de dicha póliza. La adquisición de una póliza de seguro fue un requisito exigido por Bayamón Ford para venderle el vehículo a los recurridos. 
Al otorgarse el contrato, el fabricante del vehículo acordó extenderle una garantía básica de treinta y seis (36) meses o treinta y seis mil millas, lo primero que ocurriera. La recurrente Ford Motor Co. Caribbean es la representante del fabricante del vehículo en Puerto Rico.
El automóvil comenzó a presentar defectos al día siguiente del otorgamiento del contrato. Así las cosas, continuó presentando una serie de desperfectos, todos los cuales fueron notificados a Bayamón Ford. El vehículo fue llevado en varias ocasiones al taller de reparaciones de esta última a los fines de que se honrara la garantía convenida. No obstante, los desperfectos nunca fueron corregidos satisfactoriamente.
El 17 de agosto de 1999, los recurridos presentaron una querella ante DACO contra Bayamón Ford, Ford Motor Co. Caribbean, Inc., y Ford Motor Credit Co. Solicitaron ante la agencia que las querelladas le cambiaran el vehículo por otro igual, o que en la alternativa se decretara la rescisión del contrato.
Luego de ser notificada la querella, un inspector de DACO realizó una inspección al vehículo en el taller de reparaciones de Bayamón Ford, encontrando defectos en el mismo. Dicha inspección se realizó el 8 de septiembre de 1999.
El 6 de marzo de 2000, se celebró la vista administrativa del caso en la cual todas las partes estuvieron debidamente representadas. Finalmente, el 10 de mayo de este ano, DACO emitió la resolución recurrida. Determinó lo que se transcribe a continuación:

"Se decreta la resolución del contrato de compraventa del vehículo. Dentro del plazo de veinte (20) días a partir de la fecha de notificación de la presente resolución, las querelladas Bayamón Ford y Ford Motor Co. Caribbean, Inc., solidariamente, pagarán a la parte querellante todo el dinero que ésta haya pagado a Ford Motor Credit, Co. (mensualidades y depósito) y le relevarán solidariamente y dentro del mismo término del remanente del contrato de compraventa al por menor a plazo con Ford Motor Credit Co. y, además, la cantidad de $500 en honorarios de abogado...

Una vez estas querelladas cumplan lo ordenado, la parte querellante les devolverá el vehículo.

Se desestima la querella respecto a Ford Motor Credit Co...". 

El 25 de mayo de 2000, la recurrente presentó moción de reconsideración ante la agencia solicitando la *919 modificación de la resolución emitida a los fines de excluir del pago ordenado la partida de $3,361.00, correspondiente a la prima de seguro del vehículo financiada, y de "eliminar la condena de relevar a la parte querellante del remanente del contrato de compraventa al por menor a plazos, toda vez que el Departamento está adjudicando una controversia entre comerciantes (vendedor, fabricante y financiador), para lo cual este Departamento carece de jurisdicción". 
Transcurridos quince (15) días desde la presentación de dicha moción sin que la agencia se expresara en cuanto a ella, se entendió rechazada de plano, de conformidad con lo dispuesto en la sección 3.15 de la Ley de Procedimiento Administrativo Uniforme. 3 L.P.R.A. see. 2165.
En virtud de lo anterior, Ford Motor Co. Caribbean, Inc., sin objetar la resolución del contrato decretada por DACO, recurrió ante nos imputando a la agencia la comisión de los siguientes errores:
“1. ".. Erró DACO, como cuestión de derecho, al ordenar a la Ford a pagar, solidariamente, todo lo pagado por la parte querellante bajo el contrato de financiamiento (mensualidades y depósito), ya que en cada mensualidad se contempla el repago de la partida de $3,361.00, por concepto de primas de seguro, cuya partida no es parte del precio pagado por el vehículo; la Ford no fue parte del contrato de seguro, ni tuvo intervención alguna en el mismo, y la cubierta de seguro es algo que se consume en beneficio de la parte querellada."
2. "...Erró DACO al ordenar a Ford y a Bayamón Ford a relevar a la parte querellante del remanente del contrato de financiamiento con Credit porque: (1) Ford no es parte del contrato de financiamiento; y (2) una vez decretada la resolución del contrato de compraventa, el contrato de financiamiento se desploma por falta de objeto. Cualquier acción ulterior entre el fabricante, el vendedor y la entidad financiera, es una controversia entre comerciantes, para la ventilación de la cual DACO carece de jurisdicción."
No le asiste la razón.
En el caso de autos, los recurridos y Bayamón Ford suscribieron un contrato de compraventa al por menor a plazos cuyo objeto fue el referido vehículo de motor. También surgió entre ellos un convenio expreso de garantía. Simultáneamente, Bayamón Ford, cedió a Ford Motor Credit Company todos sus derechos, título e interés sobre el contrato. Estando en vigor la garantía convenida, el automóvil presentó una serie de desperfectos los cuales no pudieron ser corregidos satisfactoriamente por Bayamón Ford, incumpliendo así la obligación contraída en virtud del contrato de garantía. 
La Ley de Garantías de Vehículos de Motor tiene como propósito cardinal proteger al consumidor de vehículos de motor nuevos, asegurándole que sus intereses y las garantías de fábrica sean salvaguardados frente a los del manufacturero y el distribuidor o vendedor. Ley Núm. 7 de 24 de septiembre de 1979 10 L P R A see 2051, et. seq.
Por mandato de ley, DACO es la agencia encargada de velar por el fiel cumplimiento de estas disposiciones y por responsabilizar al fabricante, manufacturero o distribuidor por los daños que causen defectos de fabricación, diseño, ensamblaje o manufactura." 10 L.P.R.A. see. 2060. Esta agencia posee facultad para adoptar las reglas y reglamentos que considere necesarios para cumplir los propósitos de esta pieza legislativa, conforme a los poderes y facultades que le confiere su Ley Orgánica. 10 L.P.R.A. see. 2063. ’
A tenor con el Artículo 11 de la antes citada ley, el distribuidor autorizado, el distribuidor independiente y el distribuidor o vendedor que venda a un consumidor un vehículo de motor nuevo, vendrá obligado a prestar efectivamente, los servicios de garantía de fábrica. 10 L.P.R.A. see. 2061. ’ ;
El 30 de septiembre de 1992, DACO, en el ejercicio de las facultades que le otorga la Ley Ntím. 7, supra, *920 promulgó el Reglamento Núm. 4797 de Garantías de Vehículos de Motor. 10 R.P.R. § 250.1701 et seq. El texto de dicha pieza dispone que su interpretación deberá hacerse liberalmente a favor del consumidor. 10 R.P.R. §250.1702.
Dicho Reglamento, en su Artículo 26.3, establece que DACO podrá, a opción del comprador, decretar la resolución del contrato de venta de un vehículo de motor nuevo o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Advierte que lo que constituye oportunidad razonable de reparar, se determinará tomando en consideración las circunstancias particulares de cada caso. 10 R.P.R. § 250.1719.
No obstante, el Reglamento hace la salvedad de que nada de lo dispuesto en el mismo limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos y la acción redhibitoria que reconoce el Código Civil. 10 R.P.R. 250.1733.
En el caso de marras, los recurridos solicitaron a DACO que decretara la resolución del contrato de venta -al por menor a plazos- del vehículo de motor nuevo, comprado a Bayamón Ford, ante el incumplimiento de las querelladas con el acuerdo de garantía incorporado en el mismo. DACO investigó la querella y determinó que hubo incumplimiento del convenio de garantía por parte de Bayamón Ford y Ford Motor Co. Caribbean debido a que no se corrigieron los desperfectos del automóvil en un período razonable y decretó la resolución del contrato de compraventa al por menor a plazos. Ordenó a estas últimas, solidariamente, devolver a los recurridos todo el dinero que le hubieren pagado a Ford Motor Credit y relevarlos del remanente del contrato de compraventa. Asimismo, ordenó a los recurridos devolverle el vehículo a las querelladas.
Es norma reiterada que las determinaciones hechas por las agencias administrativas gozan de una presunción de corrección y merecen la mayor deferencia por parte de los tribunales. Ello es así, a menos que se demuestre parcialidad o abuso de discreción. Fuertes v. ARPE, 134 D.P.R. 947 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975).
Las agencias administrativas poseen vasta experiencia y conocimientos altamente especializados sobre los asuntos que se le han delegado y con los que trabajan diariamente. Por ello, en los casos en que se solicita la revisión de sus decisiones, los foros judiciales deben limitarse a determinar si mediaron actuaciones arbitrarias, caprichosas, o irrazonables, de tal modo que pueda concluirse que la agencia cometió un abuso de discreción. San Vicente Frau v. Policía de Puerto Rico, Op. de 12 de noviembre de 1996, 96 J.T.S. 148; La Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521(1993); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987).
Entendemos que la determinación de DACO fue razonable. Veamos.
El Reglamento Núm. 4797, supra, cuerpo jurídico que le confiere autoridad a DACO para decretar la resolución de contratos en casos como el de marras, nos refiere al Código Civil. Por tanto, una determinación de la agencia, a los efectos dispuestos en su Artículo 26.3, debe estar en armonía con las disposiciones pertinentes del Código que permiten dicho curso de acción y con su jurisprudencia interpretativa. Así las cosas, procede examinar dichas normas para adjudicar la procedencia de la determinación de DACO en el presente caso.
Es sabido que las obligaciones nacidas de los contratos deben ser cumplidas por las partes al tenor del mismo. Art. 1044 del Código Civil, 31 L.P.R.A. see. 2994. Así las cosas, ante el incumplimiento de las obligaciones contractuales, nuestro ordenamiento provee optar por exigir el cumplimiento específico de lo pactado, o que se decrete la resolución del contrato. Art. 1077 del Código Civil, 31 L.P.R.A. see. 3052.
*921 La resolución de un contrato tiene efectos retroactivos, debiendo devolverse, las partes, las prestaciones, si alguna, que se hayan entregado, o. colocarse ambas en el mismo estado en que se encontraban al momento de contraer la obligación. Manresa, en sus Comentarios al Código Civil Español, expresa en cuanto al particular que la consecuencia de la resolución de las obligaciones es el reintegro de las cosas y del valor de las prestaciones que las partes aportaron por razón del contrato. 
De otra parte, el Tribunal Supremo ha asemejado la obligación que surge de la garantía expresa que extiende el fabricante de un vehículo, a la garantía implícita que envuelve la responsabilidad de saneamiento por vicios ocultos a la que está obligado el vendedor a tenor con las disposiciones del Art. 1350 del Código Civil. Ferrer Delgado v. G.M.C., 100 D.P.R. 246 (1971).
En relación al particular, nuestro más alto foro ha expresado que las dos formas tradicionales de garantía consisten en asegurar la posesión pacífica y útil de la cosa vendida y en la obligación de sanear los vicios o defectos ocultos que tuviere. En el contrato de compraventa, el propósito o causa de la venta para el comprador es adquirir la cosa para servirse de ella y dicho propósito dejaría de realizarse si una vez hecha la entrega, el comprador se ve privado de la cosa o imposibilitado de aplicarla a los usos que le son propios debido a vicios ocultos. De aquí surge la obligación de garantía que tiene el vendedor. Ferrer Delgado v. G.M.C., supra.
En los casos de saneamiento por defectos o vicios ocultos, el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o podrá rebajar una cantidad proporcional del precio, a juicio de peritos. Art. 1375 del Código Civil, 31 L.P.R.A. see. 3843.
En el citado caso de Ferrer v. G.M.C., supra, el Tribunal Supremo impuso responsabilidad solidaria al vendedor, al distribuidor y al fabricante de un vehículo de motor en una acción de saneamiento por vicios ocultos. Determinó que éstos debían reembolsar al comprador del automóvil, el precio pagado por éste, los gastos en que necesariamente incurrió por motivo de los defectos o vicios del mismo, más costas y honorarios de abogado.
Posteriormente, én Secretario del DACO v. Marcelino Mercury y Ford Motor Company Caribbean, 105 D.P.R. 80 (1976), caso similar al anteriormente citado, el Tribunal Supremo declaró resuelto el contrato de compraventa de un automóvil, y ordenó al vendedor y al fabricante reembolsarle al comprador, solidariamente, el pronto pago abonado por éste, más los gastos pagados por concepto de mensualidades vencidas, registro, seguro y financiamiento, más costas. Asimismo, ordenó al comprador entregarle el vehículo de motor defectuoso a los demandados.
En el presente caso, a la luz de las normas y precedentes antes expuestos, concluimos que la resolución decretada por DACO tiene el efecto de colocar a las partes en el mismo estado en que se encontraban al momento de otorgarse el contrato deshecho, devolviéndose, recíprocamente, las prestaciones que se hubieren entregado por razón del contrato.
El contrato resuelto por la agencia fue uno de venta al por menor a plazos de un vehículo de motor nuevo. El contrato de ventas al por menor a plazos consiste en un acuerdo para pagar el precio de mercancía o servicios en el transcurso de un período determinado de tiempo. Este tipo de acuerdo está regido por la Ley de Ventas al por Menor a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1961. 10 L.P.R.A. see. 731, et seq. Dicho estatuto tiene el propósito de regular de forma amplia todo el campo de crédito en Puerto Rico, particularmente en lo que a la intervención de un tercero cesionario se refiere. Berríos v. Tito Zambrana Auto Inc., 123 D.P.R. 317 (1989).
Generalmente, en este tipo de contrato, una vez perfeccionada la compraventa a plazos, el vendedor recurre a una entidad financiera cediéndole su posición frente al comprador a cambio del pago inmediato del precio pendiente. No obstante, por la naturaleza dinámica del financiamiento de consumo, ambas operaciones ocurren *922 simultáneamente, tal como ocurrió en el presente caso. De ordinario, existe un previo acuerdo genérico entre el vendedor y la entidad que brinda el crédito a través del cual ésta se compromete a financiar las ventas a plazos que el vendedor vaya a realizar en el ámbito de su actividad comercial. Este esquema -venta a plazos y financiamiento simultáneo-, crea una relación tripartita entre el comprador, el vendedor y la entidad financiera en la que la cesión del contrato de venta condicional está prevista desde el mismo momento en que se perfecciona la compraventa original. Berríos v. Tito Zambrana Autos Inc., supra.
De este modo, dada la estrecha conexión funcional que existe entre el contrato de venta condicional a plazos y el de financiación -aunque mantienen su independencia formal-, la nulidad del contrato original lleva consigo la inexistencia del negocio de cesión de contrato, ya que carece de objeto. Berríos v. Tito Zambrana, supra.
Así, pues, en el presente caso, al haberse resuelto el contrato de compraventa al por menor a plazos del vehículo, resultaron deshechos por razón de quedar sin objeto, tanto el contrato de financiamiento como la cesión de crédito hecha por el vendedor a la entidad financiera, retomando así las partes originales (vendedor, comprador y fabricante) al estado previo al otorgamiento del contrato principal. En consecuencia, y como antes expresamos, las partes han de devolverse recíprocamente todas las prestaciones entregadas por razón del contrato, como en efecto DACO lo ordenó.
Siendo la recurrente, Ford Motor Company Caribbean, la representante autorizada del fabricante del vehículo, y quien extendió la garantía incumplida, corresponde tanto a ella como a la vendedora, Bayamón Ford, responder, en forma solidaria, por las consecuencias de la resolución del contrato, devolviendo a los recurridos todas las prestaciones que éstos entregaron a Ford Motor Credit Company por razón del contrato. Véase Ferrer v. C.M.C., supra; DACO v. Marcelino Mercury y Ford Motor Co. Caribbean, supra. Entendemos que los propósitos que permean, tanto la Ley de Garantías de Vehículos de Motor como su reglamento, refuerzan nuestra conclusión.
Tomando en cuenta el hecho de que la adquisición de una póliza de seguro para el vehículo fue un requisito expresamente exigido por Bayamón Ford para venderle el mismo a los recurridos y a la luz de lo intimado en DACO v. Marcelino Mercury y Ford Motor Company Caribbean, supra, concluimos que los gastos de dicho seguro constituyen parte de las prestaciones aportadas por los compradores por razón del contrato. Así las cosas, procede incluir la partida por concepto de seguro como parte de la suma a ser pagada a los recurridos por Bayamón Ford y Ford Motor Company Caribbean.
Examinados los efectos de la aplicación de la figura jurídica de la resolución de los contratos, es forzoso concluir que los recurridos quedan automáticamente relevados del remanente de la deuda que tienen con Ford Motor Credit Co. Ese es el alcance que entendemos tiene la orden de relevo solidario emitida por DACO contra Ford Motor Company Caribbean y Bayamón Ford.
A los recurridos les corresponde, entonces, devolver el vehículo objeto del contrato a las querelladas.
Así las cosas, no habiendo presentado la recurrente ninguna prueba que pueda llevar a este Tribunal a concluir que el organismo administrativo erró o haya abusado de su discreción al emitir la resolución recurrida, sus argumentos no derrotan la presunción de regularidad y corrección de la cual gozan las determinaciones administrativas. En consecuencia, debemos sostener la determinación hecha por DACO.
Por los fundamentos antes expuestos, se deniega el recurso instado.
El Juez José M. Aponte Jiménez concurre con el resultado.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
*923 Gladys É. Ortega Rafnífez
Subsecretaria General
ESCOLIOS 2001 DTA 65
1. Una póliza de "double interest" o interés doble, se circunscribe a responder por los daños ocasionados al vehículo del asegurado y a garantizar el crédito de la entidad financiera, excluyendo la responsabilidad de éstos frente a terceros.
2. Véase " Contrato de Venta al Por Menor a Plazos", Apéndice del Recurso, a la pág. 11.
3. Se desestimó la querella instada contra Ford Motor Credit Co., debido a que los recurridos no le notificaron a ésta fes defectos que presentaba el vehículo, mediante correo certificado con acuse de recibo, dentro del plazo de veinte (20) días a partir de su conocimiento de los mismos, conforme a 1o dispuesto en el Artículo 209 (a) (3) de la Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, 10 L.P.R.A. §741 etseq.
4. Véase "Moción de Reconsideración", Apéndice del Recurso, a la pág. 9.
5. A la fecha de emitirse la resolución recurrida, el vehículo aún permanecía en el taller de reparaciones de Bayamón Ford sin que fueran corregidos sus desperfectos.
6. Ley Orgánica del Departamento de Asuntos del Consumidor, 3 L.P.R.A. § 341 et seq.
7. Vélez Torres, José R„ Derecho de Obligaciones, 2da. Ed., San Juan, 1997, a la pág. 72.
8. Manresa, Comentarios al Código Civil Español, T.VIII, Vol. I, 6ta Ed., Reus, 1967, a la pág. 427.
9. 31 L.P.R.A. see. 3801.